UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| James Bien, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00074-ALM |
| | § | JURY |
| Union Pacific Railroad Company, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Plaintiff moves for partial summary judgment, seeking a ruling on the exhaustion of administrative remedies defense discussed herein.

## I. Summary of the Argument

Plaintiff filed this Americans With Disabilities Act ("ADA") case after Union Pacific removed him from his job as a conductor because of its mistaken belief that he could not recognize the colors of the lighted signals alongside its railroad tracks. Defendant claims it merely followed federal law requiring it to deny Plaintiff's recertification as a conductor, and argues that if Plaintiff wished to challenge its decision, he first had to exhaust administrative remedies available under federal certification regulations (49 C.F.R Part 242) promulgated pursuant to the Federal Railroad Safety Act.

Federal courts are divided on whether a railroad conductor who is denied certification or recertification must exhaust these administrative remedies before asserting a claim for disabilities discrimination under the Americans With Disabilities Act. For purposes of this

1

motion, Plaintiff assumes his claims would normally be foreclosed by a failure to exhaust, but his claims are not barred based on the unique facts of this case.

        1.      The regulations concerning certification of conductors required Union Pacific to have a certification program that included a color-vision testing procedure.  The regulations also required Union Pacific to submit its certification program and testing procedures to the Federal Railroad Administration ("FRA") for review and approval before implementing its testing procedure.  Union Pacific did submit something to the FRA for review, but its submission did not describe the color vision testing procedures used in this case to disqualify Plaintiff from his job as a conductor.  Union Pacific has therefore forfeited any exhaustion defense it might otherwise have had.

        2.      If Union Pacific made a certification decision not to recertify Bien as a conductor, the federal certification regulations required Union Pacific to notify Plaintiff of its certification decision in writing.  Union Pacific sent a letter to Bien informing him of a work restriction, but mothing in this letter or any other documents informed Bien of a decision to deny him recertification as a conductor.  Because Union Pacific failed to comply with the regulations, Plaintiff had no opportunity to challenge a certification decision that he was not aware of, so Union Pacific has forfeited any exhaustion defense it might otherwise have had.

## II.  Statement of the Issues

Assuming for argument that a railroad conductor must normally exhaust the dispute resolution procedures in 49 C.F.R. §§ 242.401 – 242.407 before asserting an Americans With Disabilities claim against his railroad employer, whether this exhaustion requirement does not apply when:

2

1. The railroad's denial of recertification was based on its application of a color vision testing program that it did not submit to the Federal Railroad Administration for review and approval, as required by 49 C.F.R. § 242.103.

2. The railroad does not comply with the notification provisions of 49 C.F.R. § 242.401 and notify the conductor of its decision to deny recertification.

### III. Documents Attached as Summary Judgment Evidence

| | |
|---|---|
| Exhibit 1. | Declaration of James Bien |
| Exhibit 2. | Union Pacific's Conductor Certification Program (filed separately) |
| Exhibit 3. | Union Pacific's color vision testing instructions and procedures |
| Exhibit 4. | Letter to Bien imposing work restrictions |
| Exhibit 5. | Emails from SMART union General Chairperson J. Scott Chelette |

### IV. Statement of Undisputed Facts

James Bien began working for Union Pacific in 1998 as a switchman/brakeman. He later became a conductor, and he worked for roughly fifteen years as a thru freight conductor. Exhibit 1, ¶ 3.

**A.   Color vision regulations and procedures**

Since 2011, FRA regulations have required railroads to have a program for certifying and recertifying employees to work as train conductors. 49 C.F.R. § 242.101. The program has to mandate training, include knowledge testing, and provide for hearing and visual assessments to make sure conductors meet standards specified in the regulations. *Id.* After initial certification, regulations require railroads to recertify a conductor every three years.

The certification standards relevant in this case are those concerning color vision. To certify or recertify a conductor, a railroad must determine if he or she has sufficient color-vision capacity "to recognize and distinguish between the colors of railroad signals." *Id.* § 242.117(h)(3). To make this determination, regulations require a railroad to administer a color

vision test using one of twelve tests listed in the regulations. *Id.* App'x D §§ (2)-(3). Union Pacific uses the 14-plate Ishihara color vision test, which is one of the twelve approved tests.

An employee who does not pass this first test is entitled to a secondary evaluation. *Id.* § 242.117(j) & App'x D § (4). The regulations do not specify what tests or procedures to use at this point, they only say: "Ophthalmologic referral, field testing, or other practical color testing may be utilized depending on the experience of the examinee." *Id.* App'x D § (4). Union Pacific uses a field test at this stage of the assessment.

The discretion afforded to the railroads at this stage is not, however, unlimited. There is some level of review and oversight by the FRA. For example, each railroad is required to submit its written conductor certification program to the FRA for review and approval. *Id.* § 242.103. And most importantly for present purposes, the certification program has to include: "A procedure for evaluating visual and hearing acuity that complies with the criteria established in § 242.117. *Id.* § 242.01(a)(3).

Union Pacific submitted its certification program to the FRA on November 8, 2012. See Exhibit 2.[1] However, the program it submitted did not include a procedure for evaluating color vision, as required by 49 C.F.R. § 242.01(a)(3) and 49 C.F.R. § 242.117(h)(3). Instead, Union Pacific's submission only said that it would comply with regulations:

> Visual and hearing acuity tests required by §242.117 will be conducted by an individual who meets the requirements of §242.117(d). Results of the examinations will be forwarded to Union Pacific's Medical Director. A person not meeting the fitness requirements for vision and hearing acuity specified in §242.117 will be referred to the Union Pacific Medical Department for further medical evaluation in accord with §242.117(j)22 and Appendix D to §242.

*See* Exhibit 2, page 14.

---

[1] This document is being filed separately, under seal, at Union Pacific's request.

The regulations also include an important notice requirement. If Union Pacific denied Bien's recertification as a conductor in 2014, after his alleged failure to pass the color vision field test, Union Pacific was required to notify Bien of this in writing. 49 C.F.R. § 242.401(c).

## B.     Bien's employment at Union Pacific

In 1998, before Bien could start working, he had to take a physical that included hearing and vision testing. Bien did not pass an Ishihara color vision test that was administered as part of the pre-employment testing, but at Union Pacific's request, Bien made arrangements to take a Farnsworth color vision test, which he passed, and he went to work as a switchman/brakeman.

Starting about 2006, Union Pacific retested Bien's color vision every three years or so. Each time, he was first given an Ishihara test, which he always failed. Union Pacific would then test Bien's color vision using a field test where he and a supervisor went just outside Union Pacific's train yard in Longview, and Bien was asked to identify the colors of wayside signals that were used to control the movement of trains on the mainline track. Bien always passed this test and was recertified as a conductor and allowed to continue working.

On March 25, 2013, as part of the recertification testing, Bien took a 14-plate Ishihara color vision test. Bien was informed that he failed this test.

On April 9, 2013, an employee in Defendant's Health and Medical Services Department sent out a note telling two of Defendant's employees to schedule a color vision field test for Bien, and to administer the test using the procedures described in the form she sent out along with her note. *See* Exhibit 3.

On or about July 24, 2013, Bien got a call from a union representative named Mike Searcy. He told Bien to go to Union Pacific's Davidson yard in Fort Worth for a color vision test.

5

On July 25, 2013, Bien went to the Davidson yard and met Mike Searcy there. They went out into the yard with two Union Pacific employees. Bien was asked to look at a signal that was about ¼ mile away. It had two bulbs, one on top and one on bottom. It was not a wayside signal that was being used in the Davidson yard to control the movement of trains. Union Pacific had Bien look at the signal and say what he saw. For example, if Bien saw a red light on top and a yellow light on the bottom, he would say red over yellow. One of the Union Pacific employees present wrote down what Bien said, and he wrote whether he believed Bien had correctly identified the signals. Bien was told he got three out of ten wrong, but Bien doesn't know how the employee determined this. If this was based solely on the vision of the person recording the test results, it is possible that he misidentified the colors, and not Bien.

Bien later received a letter from Union Pacific dated July 30, 2013. A true and correct copy of this letter is attached as Exhibit 4 to the motion for partial summary judgment. The letter said Bien was being given a work restriction: "You are not to perform jobs requiring color signal recognition." The letter also said the restriction could not be accommodated, so Bien was not allowed to continue working as a conductor.

Bien never received a document from Union Pacific stating that the company made a decision about whether to recertify him as a conductor.

Bien had no idea that he could or should petition for review of a certification decision, for two reasons. First, Bien had not been informed of a certification decision, so there was no certification decision to challenge, and second, Bien didn't know anything about the Dispute Resolution Procedures in the Federal Railroad Administration ("FRA") regulations. Instead, he turned to his union for assistance. One of the people Bien talked to was Scott Chelette. No one

at the union ever said anything to Bien about the Dispute Resolution Procedures in the FRA regulations.

## V.  Argument and Authorities

**A.       Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material. *Id.*

**B.       Union Pacific's failure to submit its color vision field testing procedures to the FRA means it cannot assert an FRA exhaustion defense.**

Union Pacific contends that Plaintiff's claims are barred because of Plaintiff's failure to follow regulations that Union Pacific also failed to follow.  But even if Plaintiff had been made aware of a certification decision and he pursued an FRA appeal, Union Pacific could not have relied on compliance with its own testing procedures to justify its certification decision.  Those testing procedures are not in the regulations, and they were never submitted to the FRA for review as required by law.  It therefore makes no sense for Defendant to argue that Bien's ADA claims are barred because Bien failed to do something that would not have resolved the dispute over the certification decision.

Even in situations where a railroad has followed applicable federal regulations, courts distinguish between procedures specifically mandated by federal law and those devised entirely by the private company employer.  For example, in *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570 S. Ct. 2162, 144 L. Ed. 2d 518 (1999), an employer fired a truck driver because

Department of Transportation regulations required him to have 20/40 vision, which he did not have. The truck driver then filed an ADA claim.

The Supreme Court emphasized that the employer's decision was not based on a standard of its own design, but rather it was applying a specific standard required by federal law. *Id.*, 527 U.S. at 570. Because the employer had no choice on the matter, the Court found the employer's compliance with regulations to be a defense to the driver's ADA claims. *Id.*

The present case is nothing like *Albertson's*. Plaintiff is not suing Union Pacific for a decision based on something required by the FRA – Union Pacific is suing over a decision it made using a color vision field test that it developed on its own and never disclosed to the FRA so they could review and reject the test if found to be deficient. *See* 49 C.F.R. § 242.103(g), providing that a railroad cannot implement its certification program if the FRA notifies the railroad in writing that it does not meet the criteria set forth in Part 242. On these facts, Union Pacific cannot credibly claim it can't be liable because it was just following regulations.

Another case emphasizing the distinction between mandated procedures and non-mandated procedures is *Rohr v. Salt River Project Agricultural Improvement & Power District*, 555 F.3d 850 (9th Cir. 2009). In that case, the district court held that Rohr was not qualified because he failed an Occupational Health and Safety Administration ("OSHA") respirator certification test that his employer administered. *Id.* at 855, 858. The Ninth Circuit reversed because the employer's test was of its own creation and not required by regulations. The court rejected the employer's argument that OSHA "mandated" the content of its respirator-certification test, i*d.* at 862-63, adding that the regulations did "not specify the content," "requirements," or "appropriate tests for determining whether an employee should be certified." *Id.* The court explained that "[t]his is not a case where an employer merely implemented the

8

medical certification program required by a federal agency." *Id.* at 863. "OSHA's regulations were sufficiently broad to allow [Rohr's employer] the discretion to determine how…it would evaluate its employees' ability to use a respirator." *Id.* Given the flexibility that OSHA provided, Rohr's employer could have used an alternative test, or provided Rohr with a testing accommodation. *Id.*

Five recent decisions analyzing ADA challenges to railroad color-vision field tests confirm this analysis.[2]  *Mills* is instructive.[3]  Rejecting Union Pacific's argument that Mills was not qualified because he failed Union Pacific's color-vision field test, the court recognized that the FRA's "regulations do not require" the test Union Pacific used. 2024 WL 185246, at *6. Those regulations merely "establish a framework for railroad companies to employ," but "[w]ithin this framework, railroad companies have significant discretion in selecting and implementing" field tests of their choosing. *Id.* at *4. Given that Mills claimed that the test Union Pacific "created" and "used" was discriminatory, "[i]t would make no sense…to hold that Mills" is not qualified "simply because he failed the test he is currently challenging." *Id.* at *4, *10.

Returning to Union Pacific's exhaustion defense, Union Pacific is claiming the FRA should have had an opportunity to review and apply color vision testing procedures it had never

---

[2] *Stern v. Nat'l R.R. Passenger Corp.*, 2025 WL 1222302, at *4-5 (D. Ariz. Apr. 28, 2025);
*EEOC v. Union Pac. R.R. Co.*, 2024 WL 3328718, at *5-6 (D. Minn. July 8, 2024); *Mills v. Union Pac. R.R. Co.*, 2024 WL 185246, at *9-11 (D. Idaho Jan. 16, 2024); *Walker v. Union Pac. R.R. Co.*, 2023 WL 10354310, at *8-12 (D. Or. Dec. 18, 2023), report & recommendation adopted, 2024 WL 1052678 (D. Or. Mar. 11, 2024).

[3] None of these cases addressed the issue argued by Plaintiff in this section of this motion.  The courts all seem to assume that the railroad followed federal law and submitted its certification program to the FRA, and either obtained approval or was allowed to implement its program because it did not receive notice of defects within the thirty-day period specified in 49 C.F.R. § 242.103(g).  As for the Union Pacific cases cited herein, they involve events that took place later, and perhaps Union Pacific eventually did submit a certification program that met all of the required criteria.

even been made aware of. But as the foregoing cases show, when an employer applies its own tests, it cannot invoke a defense that it was only following regulations.

Union Pacific claims it prioritizes safety, and it seeks to shroud itself in this cloak of virtue, but the facts prove otherwise. In reality, Union Pacific devised its own test and then kept it hidden from scrutiny by failing to describe its testing procedures in the conductor certification program it submitted to the FRA for review. Union Pacific cannot escape potential liability on Plaintiff's ADA claim due to Plaintiff's alleged failure to comply with regulations, when Union Pacific failed to comply with its obligations under those same regulations.

### C.    Union Pacific's failure to notify Bien of a certification decision means it cannot assert an FRA exhaustion defense.

After he took the color vision field test, Bien received a letter from Union Pacific dated July 30, 2013. *See* Exhibit 4. Nothing in this letter informed Bien that Union Pacific made a certification decision. Rather, the letter only said Union Pacific was imposing a work restriction on him: "You are not to perform jobs requiring color signal recognition." Exhibit 4.

Union Pacific may argue that it notified Bien of facts from which he might have inferred that his recertification as a conductor had been denied, but the regulation does not say to drop hints, or provide clues. The regulation states, in relevant part:

> (a) A railroad shall notify a candidate for certification or recertification of information known to the railroad that forms the basis for denying the person certification and provide the person a reasonable opportunity to explain or rebut that adverse information in writing prior to denying certification. A railroad shall provide the conductor candidate with any written documents or records, including written statements, related to failure to meet a requirement of this part which support its pending denial decision.
>
> (c) If a railroad denies a person certification or recertification, it shall notify the person of the adverse decision and explain, in writing, the basis for its denial decision.

Simply put, written notice is required, and in this case it was not given.

In a recent case, *Cromeens v. Union Pac. R.R. Co.*, 2025 WL 2675953 (D. Neb. Sept. 18, 2025), the district court excused the railroad's failure to give clear written notice of a certification decision by arguing, essentially, that the railroad came close enough. *Id.* at *6. This casual disregard of the statutory notice requirement is questionable in light of the clear text of the statute, but it may have been justified based on the facts before the court in that case. In the present case, however, the facts cannot support a similar conclusion.

In this case, Union Pacific's failure to notify Plaintiff of a certification decision prejudiced Plaintiff's ability to appeal a certification decision. In his sworn declaration, attached as Exhibit 1, Bien states that he never received a document from Union Pacific stating it had made a certification decision, so he had no certification decision to challenge. Instead, he sought assistance from his union.

Bien's union did not pursue an appeal because Union Pacific presented Bien's removal from service as a medical examination failure, not a certification decision. *See* Ex. 5.

It is therefore not credible for Union Pacific to argue Bien should have appealed a certification decision he had not been informed of. This failure to provide written notification as required by the regulations therefore defeats Union Pacific's failure-to-exhaust defense.

## VI.  Conclusion and Prayer

Because of Union Pacific's disregard of and failure to follow the federal regulations it claims to be so important, this Court should grant this motion and enter summary judgment for Plaintiff on Union Pacific's exhaustion of administrative remedies defense to Bien's ADA claims based on 49 C.F.R. Part 242 (which are the regulations concerning conductors promulgated pursuant to the Federal Railroad Safety Act).

Respectfully submitted,

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

On October 10, 2025, I filed the foregoing document with the Clerk of the U.S. District Court for the Eastern District of Texas using the court's electronic filing system, which constitutes service on all parties under Rule 5(b) of the Federal Rules of Civil Procedure.

/s/ Donald E. Uloth
Donald E. Uloth