Exhibit 1.
Declaration of James Bien

**DECLARATION OF JAMES BIEN**

1. My name is James Bien. I am over twenty-one (21) years of age, and I am competent to make this Declaration. I have personal knowledge of the facts set forth herein, and they are all true and correct.

2. Except for the Ishihara tests discussed below, I have never had a problem seeing colors, and this includes colored train signals that I saw during my employment with Union Pacific Railroad Company ("Union Pacific").

3. I began working for Union Pacific in 1998 as a switchman/brakeman. I later became a conductor, and I worked for roughly 15 years as a thru freight conductor.

4. In 1998, before I could start working, I had to take a physical that included hearing and vision testing. I did not pass an Ishihara color vision test that was administered as part of the pre-employment testing, but at Union Pacific's request I made arrangements to take a Farnsworth color vision test, which I passed, and I went to work as a switchman/brakeman.

5. Starting about 2006, Union Pacific retested my color vision every three years or so. Each time, I was first given an Ishihara test, which I always failed. Union Pacific would then test my color vision using a field test where a supervisor and I went just outside Union Pacific's train yard in Longview, and I was asked to identify the colors of wayside signals that were used to control the movement of trains on the mainline track. I always passed this test and was recertified as a conductor and allowed to continue working.

6. On March 25, 2013, as part of the recertification testing, I took a 14-plate Ishihara color vision test. I was informed that I failed this test.

7. On or about July 24, 2013, I got a call from a union representative named Mike Searcy. He told me to go to Union Pacific's Davidson yard in Fort Worth for a color vision test.

1

8. On July 25, 2013, I went to the Davidson yard and met Mike Searcy there. We went out into the yard with two Union Pacific employees. I was asked to look at a signal that was about ¼ mile away. It had two bulbs, one on top and one on bottom. It was not a wayside signal that was being used in the Davidson yard to control the movement of trains.

9. Union Pacific had me look at the signal and say what I saw. For example, if I saw a red light on top and a yellow light on the bottom, I would say red over yellow. One of the Union Pacific employees present wrote down what I said, and he wrote whether he believed I had correctly identified the signals. I was told I got three out of ten wrong, but I don't know how he determined this. If this was based solely on the vision of the person recording the test results, it is possible that he misidentified the colors, and not me.

10. I later received a letter from Union Pacific dated July 30, 2013. A true and correct copy of this letter is attached as Exhibit 4 to the motion for partial summary judgment. The letter said I was being given a work restriction: "You are not to perform jobs requiring color signal recognition." The letter also said the restriction could not be accommodated, so I was not allowed to continue working as a conductor.

11. I never received a document from Union Pacific stating that the company made a decision about whether to recertify me as a conductor.

12. I had no idea that I could or should petition for review of a certification decision, for two reasons. First, I had not been informed of a certification decision, so there was no certification decision to challenge, and second, I didn't know anything about the Dispute Resolution Procedures in the Federal Railroad Administration ("FRA") regulations. Instead, I turned to my union for assistance. One of the people I talked to was Scott Chelette. No one at the union ever said anything to me about the Dispute Resolution Procedures in the FRA regulations.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October  10 , 2025.

_____
James Bien

3