# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| James Bien,<br><br>    Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>    Defendant. | CASE NO. 4:25-cv-00074-ALM |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Scott P. Moore (NE# 20752), Lead Attorney, *pro hac vice*
Mark J. Goldsmith (NE# 26429), *pro hac vice*
Jimmie L. Pinkham III (NE# 25534), *pro hac vice*
BAIRD HOLM LLP
1700 Farnam St. Ste. 1500
Omaha, NE  68102-2068
Phone: 402-344-0500
Email: spmoore@bairdholm.com
Email: mgoldsmith@bairdholm.com
Email: jpinkham@bairdholm.com

Hunter Johnson
Texas Bar No. 10753900
Local Counsel
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
100 Crescent Court, Suite 700
Dallas, TX 75201
Main: 214.646.3421 • Fax: 214.749.0078
Email: hjohnson@constangy.com

**ATTORNEYS FOR DEFENDANT UNION PACIFIC RAILROAD CO.**

**INTRODUCTION**

Bien's opposition relies on direct contradictions and incorrect legal standards. To start, Bien asserts that this case, and his EEOC charge, are based entirely on Union Pacific's 2015 denial of reconsideration of restrictions, but his brief focuses almost exclusively on his testing from 2013 and the EEOC did not even address his 2015 allegations. Then Bien argues that <u>only</u> the FRA could approve Union Pacific's color-vision field test, while simultaneously asking this court to examine its compliance with FRA safety regulations. Finally, Bien misstates the legal standards for a "record of" claim, the qualified individual analysis, and direct evidence. Bien's opposition fails to create a genuine dispute of material fact, and Union Pacific is entitled to summary judgment as a matter of law. Indeed, Bien does not dispute <u>any</u> of Union Pacific's stated facts.

I.   **BIEN CANNOT EVADE THE STATUTE OF LIMITATIONS BY RECASTING HIS 2013 COMPLAINTS IN LIGHT OF UNION PACIFIC'S 2015 REFUSAL TO REMOVE RESTRICTIONS.**

   A. **Bien's Focus on His 2013 Color-Vision Field Test and Restrictions Emphasizes the Untimely Nature of His Claims.**

Bien seeks to distinguish Union Pacific's 2015 refusal to reconsider his 2013 restrictions from the 2013 restrictions themselves to avoid the statute of limitations. But Bien's brief is focused almost entirely on his 2013 color-vision field test and restrictions. Even Bien's analysis of Dr. Holland's 2015 letter focuses on Bien's <u>2013</u> color-vision tests. ECF No. 55, pp. 8-9, 22. Put simply, even in discussing Dr. Holland's 2015 letter, Bien complains about <u>only</u> events that occurred in 2013. Bien cannot escape the statute of limitations by recasting his 2013 complaints in terms of Union Pacific's subsequent refusal to remove his 2013 restrictions.

   B. **Bien's Reliance on *Palmer and Muldrow* is Misplaced.**

Bien errantly relies on *Palmer* from the Eighth Circuit to support his assertion that Union Pacific's refusal to remove his restrictions in 2015 is a discrete discriminatory act. *Palmer v. Union*

1

*Pacific R.R. Co.*, 139 F.4th 970 (8th Cir. 2025). *Palmer* is distinguishable because, there, Union Pacific told Palmer it would <u>not</u> consider any new medical information. *Id*. at 973. Unlike in *Palmer*, Union Pacific explicitly told Bien in 2015 that it <u>would</u> reconsider the restrictions if he obtained medical documentation from an ophthalmologist. The only thing that changed for Bien between 2013 and 2015 is that he cheated in his initial scientific color-vision test (by using an FRA-prohibited chromatic lens) to seek reconsideration of his restrictions. *Turner*, 138 F.4th at 227 n.3; (49 C.F.R. Pt. 242, App. D(3) (2013); ECF No. 41-2, 131:5-7).

Bien attempts to catastrophize the return-to-work conditions Dr. Holland mentions in his October 13, 2015 letter, but those conditions reflect the discretion afforded to railroad medical examiners by 49 C.F.R. Pt. 242, App. D(4) (2013). In particular, the FRA's safety regulation allows for the medical examiner to choose an ophthalmologic referral, while also permitting Union Pacific to limit the number of retests, *except when changed circumstances would make retesting appropriate*, including "if the examinee's medical condition has improved in some way […]." 49 C.F.R. Pt. 242, App. D(4) (2013). Thus, the October 13, 2015 letter did not put Bien in any worse position than he was in after his 2013 restrictions. In other words, it did not constitute a discrete adverse employment action.

Further, Bien misguidedly relies upon the Eighth Circuit's interpretation of the *Muldrow* adverse action standard, which lowers the standard for <u>Title VII cases</u> from "significant change" to just some "change." ECF No. 55, pp. 28-29; *Palmer*, 139 F.4th at 973 (citing *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)). But the Fifth Circuit rejected that standard <u>for ADA cases</u> in May 2025. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 n.3 (5th Cir. 2025) ("*Muldrow* concerns Title VII discrimination cases, not ADA violations."). The October 13, 2015 letter is not a discrete act of discrimination—it is merely a reiteration of Union Pacific's 2013 decision. See

2

*Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980); see also, *Smithson v. Union Pac. R.R. Co.*, 602 F. Supp. 3d 974, 982 (W.D. Tex. 2022) ("[A]n employer standing by a prior denial after an employee requests reconsideration neither constitutes a discrete act nor extends the filing period.") (quoting *Das v. Am. Airlines, Inc.*, 2020 WL 364264, at *3 (N.D. Tex. Jan. 21, 2020). Stated differently, the October 13, 2015 letter reflected no change at all (let alone a significant change) to Bien's employment.

### C. The EEOC Did Not Investigate Bien's 2015 Allegations.

In search of some legal foothold, Bien now distorts his own EEOC administrative filing to argue that "the charge in the present case places Union Pacific's 2015 actions squarely in issue." ECF No. 55, p. 23. Bien's position fails for two reasons. First, beyond a single line referencing Bien's request for reconsideration in 2015, his entire charge focuses on events that occurred in 2013, including his removal from service, his restrictions, and Union Pacific's inability to accommodate him. Bien cannot avoid his own charge language—he only asserted that the 2015 events were a "reconsideration of the decision to prohibit me from work," and no more. ECF No. 55-2. Second, the EEOC's investigative memorandum, which directly references Bien's 2013 allegations, does not even discuss his 2015 allegations, and Bien explicitly admits this fatal fact. (ECF No. 41-2, 140:2-11). The EEOC did not mention and did nothing to investigate the 2015 allegations because Bien's charge merely alleged Union Pacific's denial of his previous restrictions (from 2013), which is not a discrete discriminatory act.

### D. Bien's Disparate Impact Claim Was Not Tolled By Harris.

Bien's contention, that his misidentified disparate impact claim was tolled by *Harris* until March 2020, is patently incorrect. ECF No. 55, pp. 27-31. *Harris* only tolled disparate impact claims until <u>August 17, 2018</u>. *Carrillo v. Union Pac. R.R. Co.*, 2021 WL 3023407, at *4-6 (W.D.

3

Tex. July 16, 2021) ("Tolling ended for Plaintiff's disparate impact claim when the Harris class voluntarily abandoned the claim's class certification."). To the extent Bien purports to assert a disparate impact claim for relief, such a cause of action is unequivocally time-barred. 42 U.S.C.A. § 2000e-5(e)(1) (300-day deadline to file charge); (ECF No. 45-9 (Bien's charge was filed on February 26, 2020)).

## II.   BIEN'S FRA EXHAUSTION ARGUMENTS DO NOT PASS MUSTER.

In arguing that Bien did not need to comply with the FRA administrative appeals process, he incorrectly seeks to use the FRA's sole authority to approve color-vision field tests as both a sword and a shield. On one hand, only the FRA can approve a color-vision field test, and Bien mistakenly argues that it did not. ECF No. 55, p. 11. On the other, although neither the FRA nor a union ever questioned Union Pacific's long-standing color-vision field test, Bien pleads for this Court now to sit in judgment of that test. This contradiction is pervasive throughout Bien's opposition, from Bien's misreading of FRA regulations to Bien's reliance on four cases—which predate *Turner*—from other jurisdictions.

First, Bien insists that the FRA must approve Union Pacific's color-vision field test. ECF No. 55, p. 11. And he is correct: *only* the FRA can approve a color-vision field test. *Turner*, 138 F.4th at 229-230. But the inverse of that must also be true. For purposes of conductor certification, only the FRA can determine whether a railroad mistakenly found that a conductor does not meet FRA vision standards or whether a railroad followed proper procedures in its certification program. *Id*. at 230; 49 C.F.R. §§ 240.405(h)–(j), 242.505(h)–(j). Thus, only the FRA can determine whether a color-vision field test meets FRA standards. Similarly, only the FRA can determine whether a railroad was wrong in denying FRA recertification. But Bien never gave the FRA a chance to decide those things in his case. *Turner*, 138 F.4th at 231.

Second, Bien misreads FRA regulations to require that Union Pacific submit specific procedures for the secondary color-vision field test. In keeping with the discretion afforded to railroad medical examiners for secondary testing (Appendix D to § 242), § 242.101 does not require a detailed description of either the "ophthalmologic referral, field testing, or other practical color testing" to be used by the railroad examiner. (ECF No. 41-5). Rather, Union Pacific's 2012 submission complied with § 242.117 by providing for initial testing and further medical evaluation as guided by Appendix D to § 242. Further, neither the FRA nor any union representative raised issue with Union Pacific's vision and hearing acuity section of its conductor certification program submission in 2012, despite its ongoing use since 1999. (ECF No. 54-1, ¶¶ 4-7; ECF No. 54-2, ¶¶ 3-5; ECF No. 41-9, p. 6).[1]

Finally, Bien's complaints regarding his notice of denial of certification and Union Pacific's 2012 conductor certification program are issues that must be raised with the FRA. *See Turner*, 138 F.4th at 231 ("[A]gencies have greater expertise in applying [their] [] certification regulations." (internal citations omitted)). As noted by the Fifth Circuit, the FRA's Operating Crew Review Board ("OCRB") can consider whether a railroad failed to follow proper procedures and whether the railroad made correct legal interpretations. *Turner*, 138 F.4th at 230; 49 C.F.R. § 242.505(i) (2013). Bien could have appealed these issues all the way up to the United States Court of Appeals, which has exclusive jurisdiction to determine the validity of final orders of the Secretary of Transportation. *Id*. at 231. He chose not to do so, despite having a document that informs him that he "did not meet the FRA vision criteria to be certified as a Conductor." ECF No. 55-1, p. 9.

---

[1] For the sake of brevity, Union Pacific does not repeat its entire argument on this issue, which is also contained within Union Pacific's Brief in Opposition to Plaintiff's Partial Motion for Summary Judgment. *See* ECF No. 54, pp. 9-11 for more detailed analysis. In short, the FRA and unions have the right to challenge, question, or comment on railroad certification program submissions, and neither did so here with respect to Union Pacific's visual acuity procedures.

### III. BIEN'S "RECORD OF" ARGUMENT IGNORES THE LAW.

In arguing that a "record of" claim does not require a "substantially limiting impairment," Bien ignores Fifth Circuit case law that is precisely on point. ECF No. 55, pp. 9-10. The Fifth Circuit has repeatedly held that a plaintiff must show <u>both</u> a record or history of impairment <u>and</u> an impairment that limits major life activity. *Hale v. King*, 642 F.3d 492, 502 (5th Cir. 2011); *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002) ("Although an individual may show that he or she has a record of impairment, if he or she fails to show that the impairment is substantially limiting, the individual may not qualify as disabled under this prong."); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998); *Dupre v. Charter Behav. Health Sys. of Lafayette Inc.*, 242 F.3d 610, 615 (5th Cir. 2001). Bien only has a "regarded as" claim, so any arguments related to accommodations are wholly inapposite. 29 C.F.R. § 1630.2(o)(4); *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998) ("[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment."); *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 838 n.9 (5th Cir. 2020).

### IV. BIEN FAILS TO PROVIDE SUFFICIENT EVIDENCE TO PROVE HE WAS QUALIFIED.

As an initial matter, Bien's "qualified individual" argument relies heavily on inapplicable case law discussing *qualification standards*. ECF No. 55, pp. 13-16. Bien's qualification standards claim—his Second Cause of Action—is <u>not</u> a disparate treatment claim; it is a disparate impact claim. *See* ECF No. 31, ¶¶ 67-74 (Bien's § 12112(b)(6) claim); *Fulbright v. Union Pac. R.R. Co.*, 2022 WL 625082, at *3 (N.D. Tex. Mar. 2, 2022) (holding that a plaintiff may not bring a section 12112(b)(6) claim under disparate treatment) (citing to *Gonzales v. City of New Braunfels*, 176 F.3d 834, 837-39 (5th Cir. 1999) (analyzing plaintiff's claim regarding his employer's refusal to

allow him to retake a qualifications test as disparate treatment but not analyzing whether the test itself "screened out the disabled," because the plaintiff did not plead disparate impact)). And, as noted in Section I(B), Bien's disparate impact claim is time-barred. See *Carrillo*, 2021 WL 3023407, at *4-6. Further, Bien cannot rely upon a legal standard for "qualified individual" that only applies in § 12112(b)(6) *disparate impact* cases to support a § 12112(a) disparate treatment claim. See *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 307 (5th Cir. 1981) ("*In the discriminatory impact context* […] [a]ll a plaintiff need prove to establish a prima facie case is that […] he is qualified for the position under all but the challenged criteria.") (emphasis added).

Bien also cannot meet his burden of proof to show that he is qualified. He makes three uncompelling arguments: (1) he argues that there is no evidence that his vision got worse; (2) he tries to call into question the reliability of his Ishihara test results; and (3) he argues that his prior experience and test results show that he is qualified. None of these arguments have merit.

First, in arguing that there is no evidence that his vision got worse, Bien attempts to flip the burden to Union Pacific to prove he is unqualified. But Bien's self-serving statement that his "color vision has not changed one bit" is insufficient to create a triable issue of fact. *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) (holding that "self-serving statements […] are insufficient to create a triable issue of fact"). The undisputed evidence is that Bien failed two color-vision field tests in 2013, then violated FRA regulations in utilizing chromatic lenses to cheat on an Ishihara test in 2015 (without informing Union Pacific). (ECF No. 41-2, 73:10-18, 107:1-4, 131:5-7). Then, in 2016, the Public Law Board ("PLB") examined Bien's 2013 color-vision field test results and found that:

> There should be no dispute that [Bien] cannot distinguish colors as required by employees in train service. It is noted that the CVFT was witnessed by managers and as well as union representation and all but [Bien] recognized all colors. [Union Pacific] determined that [Bien] cannot safely perform as a conductor or engineer.

7

Additional testing will not change the facts. (ECF No. 41-15). The PLB's conclusion that everyone but Bien could recognize the colors in the 2013 CVFT is further evidence that Bien's color vision deficiency rendered him unqualified for the conductor position. (*Id.*).

Second, Bien tries to call into question his failed Ishihara results, asserting that "Ishihara tests 'are not entirely successful at diagnosis of congenital red-green defects.'" ECF No. 55, pp. 17-18. But Bien missed a red over yellow, a yellow over red, and a lunar white signal in his 2013 color-vision field tests. ECF No. 45-2; ECF No. 45-4. Thus, it is irrelevant whether Bien does or does not have a congenital red-green defect.[2] He failed to recognize more colors than just red and green.

Third, Bien relies upon five distinguishable district court cases to support the proposition that performing a job over time is evidence of qualification. But none of those cases involve federal safety regulations that "require periodic reevaluation for purposes of conductor certification." *Blankinship v. Union Pac. R.R. Co.*, 2024 WL 5187689, at *5 (D. Ariz. Dec. 20, 2024); 49 C.F.R. § 242.105(c) (2013) (prohibiting railroads from certifying conductors for more than a three-year period); (ECF No. 41-2, 58:3-5). All five cases deal with company policies regarding either sleep apnea (*Troutman*) or prescription or illicit drug use (*Armitage*, *Hardmon*, *Breaux*, *Huffman*). In short, Bien's past performance on the job cannot create an issue of fact because past performance is insufficient to certify a conductor under FRA visual-acuity standards. By law, Bien had to take and pass FRA-mandated color vision testing *every three years*. 49 C.F.R. § 242.105(c) (2013). The uncontroverted fact remains that Bien has no evidence—including medical evidence—that raises

---

[2] Notably, there is no documentation or testimony in evidence that shows that Bien specifically had a red-green deficiency because Bien has offered no medical evidence demonstrating any color-vision acuity other than a test in which he used FRA-prohibited chromatic lenses to pass. (ECF No. 41-2, 131:5-7).

8

a genuine dispute of material fact. Bien has no color-vision tests (other than a test in which he deceptively used FRA-prohibited chromatic lenses to pass), no scientific tests, no results from an ophthalmologic examination, and no expert witnesses.

## V. TESTING ACCOMMODATIONS ARE IRRELEVANT TO BIEN'S "REGARDED AS" CLAIM.

Bien asserts that he does not need accommodations to do his job; he only needs an accommodation to pass the color-vision field test. As noted in Section III, Bien only has a "regarded as" claim, so any arguments related to accommodations are entirely inapplicable, including accommodations needed to be qualified to do the job. 29 C.F.R. § 1630.2(o)(4); *Newberry*, 161 F.3d at 280; *Amedee*, 953 F.3d at 838 n.9.

## VI. BIEN HAS NO DIRECT EVIDENCE OF DISCRIMINATORY ANIMUS AND HE CONCEDES HIS INABILITY TO ESTABLISH PRETEXT.

Bien argues that simply considering his health condition establishes "direct evidence" of discrimination, but that misstates what "direct evidence" means. Direct evidence must prove "discriminatory animus without inference or presumption." *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) (emphasis added). That Union Pacific's chief medical officer—a medical doctor and railroad medical examiner—recognized the legitimate safety risks associated with a color-vision deficiency does not establish illegal motive. *Vasquez v. Union Pac. R.R. Co.*, 2024 WL 4312257, at *5 (W.D. Tex. Aug. 26, 2024), *report and recommendation adopted*, 2024 WL 4314952 (W.D. Tex. Sept. 23, 2024), *aff'd sub nom.*, 2025 WL 3034706 (5th Cir. Oct. 30, 2025) (holding that "Union Pacific's reasonable conclusions and actions stemming from [a fitness-for-duty] evaluation" cannot constitute direct evidence).

Contrary to Bien's assertion that his color-vision deficiency was the reason for his removal from service and restrictions, the actual language of Dr. Holland's decision reveals a different

9

picture. In responding to Bien's request for reconsideration of his 2013 restrictions, Dr. Holland states: "You have been given permanent work restrictions due to your documented color vision deficiency, <u>which poses significant and imminent safety risks for you and others</u> if you work as a train crew member." ECF No. 55-1, p. 8. Dr. Holland further states:

> Your failure to pass the CVFT documented that you could not correctly identify the colors of wayside train signals, which poses an unacceptable safety risk for work as a train crew member or in other jobs where identification of colored train signals is required.

(*Id*. at p. 9). Finally, Dr. Holland notes that "you do not meet FRA medical standards for Conductor or Locomotive Engineer Certification." (*Id*.). Employers may lawfully address the work-related consequences of a disability. *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997). Further, courts recognize that the ADA forbids decisions "based on stereotypes about a disability, but it does not prohibit decision-making based on the actual attributes of a disability." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 28–29 (1st Cir. 2002). In other words, Union Pacific's good-faith, evidence-based restrictions are not unlawful merely because Bien disagrees with them. Bien cannot establish direct evidence of discriminatory animus based upon Dr. Holland's letter without inferring or assuming some unlawful motive.

Finally, Bien declares that he does not need to show that Union Pacific's stated rationale is pretextual, and he declines to produce any evidence of pretext. ECF No. 55, pp. 2, 22. Thus, Bien cannot—as a matter of law—dispute Union Pacific's legitimate, non-discriminatory basis for his removal from service and restrictions. Bien cannot establish pretext, and summary judgment should be entered in Union Pacific's favor.

## **CONCLUSION**

For the foregoing reasons, Union Pacific respectfully requests that the Court enter summary judgment in favor of Union Pacific and dismiss Bien's claims.

Dated this 17th day of November, 2025.

        UNION PACIFIC RAILROAD COMPANY, Defendant,

By: /s/ Mark J. Goldsmith
        Scott P. Moore (NE# 20752), *pro hac vice*
        Mark J. Goldsmith (NE# 26429), *pro hac vice*
        Jimmie L. Pinkham III (NE# 25534), *pro hac vice*
of    BAIRD HOLM LLP
        1700 Farnam St. Ste. 1500
        Omaha, NE 68102-2068
        Phone: 402-344-0500
        Email: spmoore@bairdholm.com
        Email: mgoldsmith@bairdholm.com
        Email: jpinkham@bairdholm.com

        Hunter Johnson
        Texas Bar No. 10753900
        *Local Counsel*
        CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
        100 Crescent Court, Suite 700
        Dallas, TX 75201
        Main: 214.646.3421 • Fax: 214.749.0078
        Email: hjohnson@constangy.com

        ATTORNEYS FOR DEFENDANT
        UNION PACIFIC RAILROAD CO.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 17, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 #261
Dallas, Texas 75252
Don.uloth.pro
*Counsel for Plaintiff*

                                            */s/ Mark J. Goldsmith*
                                            Attorney for Defendant

6917004.1