**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| James Bien, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00074-ALM |
| | § | JURY |
| Union Pacific Railroad Company, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S SURREPLY OPPOSING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to local rule CV-7(f), Plaintiff submits thus surreply responding to issues raised in Defendant's reply brief, ECF Dkt #56.

## I. The *Muldrow* some change standard applies to ADA cases, and the Fifth Circuit has not rejected this.

Defendant claims the Fifth Circuit rejected the *Muldrow*[1] standard for ADA cases, but this argument stretches *Strife v. Aldine ISD*[2] too far. The complete text of the footnote cited by Defendant on page 2 of its brief is:

> Strife references the Supreme Court's recent *Muldrow* decision as support for her argument that AISD altered the terms, conditions, or privileges of her employment. But *Muldrow* concerns Title VII discrimination cases, not ADA violations. And its conclusion—that a plaintiff need only show some "change" initiated by an employer (and not a "significant change") to substantiate a discrimination claim—does not undercut the fact that AISD made no change to Strife's employment terms. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024).

[1] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).
[2] *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237 (5th Cir. 2025).

*Strife v. Aldine Indep. Sch. Dist.,* 138 F.4th 237, 249 n.3 (5th Cir. 2025).

In *Strife*, the Court noted that *Muldrow* was an ADA case, but it did not go on to address whether this distinction made any difference. Instead, the Court proceeded to consider how the application of *Muldrow* would affect the case at bar, which would be superfluous if the Court's intent in this footnote was to reject *Muldrow's* application in ADA cases. This can hardly be characterized as a rejection of *Muldrow* for ADA cases.

Thus, the real issue is whether the Title VII vs. ADA distinction makes a difference, and it does not. The Title VII key words and language construed by the Court in *Muldrow* are also used in the ADA. Both statutes make it unlawful for an employer to "discriminate" with regard to "terms," "conditions," or "privileges" of employment. *Compare* 42 U.S.C. § 2000e-2(a)(1) (Title VII) with 42 U.S.C. § 12112(a) (ADA); *see Muldrow*, 601 U.S. at 354 (analyzing the language of § 2000e-2(a)(1)).

Courts that have addressed the issue on its merits overwhelmingly conclude that the *Muldrow* standard also applies to ADA discrimination cases, and to the Rehabilitation Act on which the ADA is based. *See, e.g., Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025) ("The Commissioner does not dispute that *Muldrow*, a Title VII case, governs here, and we agree that Muldrow is applicable to Herkert's Rehabilitation Act discrimination claim."); *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 n.3 (10th Cir. 2025) ("Today, we join our sister circuits in holding more specifically that Muldrow's some-harm standard applies not only to Title VII claims, but also to ADA claims."); *Davis v. Orange Cnty.*, No. 23-12759, 2024 WL 3507722, at *4 (11th Cir. July 23, 2024); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024). This Court must therefore determine if Union Pacific's

2

2015 refusal to lift Bien's restrictions and reinstate him affected the terms, conditions, and benefits of his employment.

## II. *Palmer* supports finding that Defendant's 2015 decision was a discrete discriminatory act.

If Dr. Holland's letter dated October 13, 2015 raised the bar Bien would have to clear to have his restrictions reconsidered, then it was a discrete discriminatory action like the one found in *Palmer*.[3] A side-by-side comparison of Union Pacific's 2013 letter concerning reconsideration and Dr. Holland's 2015 letter shows the bar was raised:

| 2013 letter | 2015 letter |
|---|---|
| If updated medical information is received, we will be glad to have the information reviewed and obtain another fitness-for-duty decision.<br><br>Dkt. #45, Exhibit A4 | HMS will only reconsider your work restrictions for color vision if we receive adequate and valid documentation from an ophthalmologist that: (1) you have had an eye condition that likely contributed to your color vision deficiency, (2) you have received treatment that has resulted in substantial improvement in this eye condition, and (3) clinic based tests show your color vision is and will remain normal.<br><br>UPRR will not allow you to retake vision exams for FRA Certification in the future.<br><br>Dkt. #45, Exhibit A12. |

Defendant claims there was no real change, because the company always had the option to refer Bien for an ophthalmological referral. Reply, p. 2. What changed in 2015, however, was Union Pacific's addition of pre-specified requirements for what the ophthalmologist had to find before the company would agree to reconsider Bien's restrictions. With no evidence that Bien had suffered an eye condition, Union Pacific would now require an ophthalmologist to say that he did, that it was treated, and Bien's color vision would not change in the future. By any

---

[3] *Palmer v. Union Pacific Railroad Company*, 139 F.4th 970 (8th Cir. 2025)

3

measure, imposing these additional barriers to reconsideration of the restrictions was an adverse action that is independently actionable under *Muldrow*.

## III.    The full extent of the EEOC's investigation is unknown, and irrelevant.

Based on one memo in the EEOC's file, Union Pacific asserts as fact that the EEOC did not investigate Bien's 2015 allegations. Reply, p. 3. Because it is possible the EEOC did investigate the 2015 allegations, without mentioning it in this memo, Union Pacific's assertion fails. Furthermore, exhaustion is not decided by what the EEOC chooses to investigate, which is a matter outside the charging party's control.

For reasons previously stated, the allegations in the charge sufficed to exhaust Bien's EEOC administrative remedies on the claims now being asserted.

## IV.    Defendant submitted no color vision assessment procedures to the FRA, so it lost certain defenses and can be liable for ADA violations.

Defendant's sword-and-shield argument on page 4 of the reply is new, and it is incorrect. Plaintiff is not asking this Court to judge Defendant's company-created color vision field test.[4] Rather, Plaintiff is pointing out that Union Pacific did not give the FRA a chance to pass judgment on its test, or for that matter, any description of its color vision assessment procedures, as required by 49 C.F.R. § 242.101(a)(3).[5]

Union Pacific's decision to bypass the FRA review process has consequences. The decision means it cannot claim it had no choice because it was only following government-mandated rules (like the vision standard in *Albertson's*[6]) when it used its own non-approved test

---

[4] Elsewhere in Plaintiff's response to the motion for summary judgment, Plaintiff does challenge the validity of Union Pacific's test.  But for purposes of the FRA exhaustion analysis, the criticisms are not relevant.
[5] Plaintiff has not argued that Union Pacific was required to submit specific procedures.  Plaintiff merely contends that 49 C.F.R. § 242.101(a)(3) required Union Pacific to include something in its certification program describing how it would assess color vision, and Union Pacific failed to do so.
[6] *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

to determine that Bien could not be certified as a conductor. *Turner*[7] does not apply, and Union Pacific can be held liable for ADA violations unless it establishes some other defense.

Regarding the FRA dispute resolution procedures, Bien was not notified of a certification decision, so he did not have a certification decision to appeal. In fact, Union Pacific had Bien undergo the FRA certification process again in 2015. *See* Defendant's Motion for Summary Judgment, page 7, ¶ 30. Bien may have still been certified as a conductor, and he came up in the company's system due for recertification. Because there is at least a question of fact whether Bien could have or should have appealed, Union Pacific is not entitled to summary judgment due to an alleged failure to appeal.

V.    **Union Pacific is not entitled to judgment as a matter of law on "regarded as."**

None of the "record of" cases cited in Defendant's reply[8] involved a plaintiff arguing he had no actual impairment, but did have a disability under the "record of" prong. These cases are not precisely on point as Defendant claims.

Defendant has also provided no authority contradicting the regulations cited in Plaintiffs response. The regulations make it clear that no actual impairment is required, and in such cases, a plaintiff only needs to show a record of a substantially limiting impairment. Defendant does not dispute this is established by the summary judgment evidence in this case, so the Court should reject Defendant's argument on "record of."

---

[7] *Turner v. BNSF Ry. Co.*, 138 F.4th 224 (5th Cir. 2025).
[8] Defendant cites four cases on page 6 of the reply: *Hale v. King*, 642 F.3d 492 (5th Cir. 2011), *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398 (5th Cir. 2002), *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998), and *Dupre v. Charter Behav. Health Sys. of Lafayette Inc.*, 242 F.3d 610 (5th Cir. 2001)

## VI. Union Pacific is not entitled to summary judgment as a matter of law on "qualified."

Defendant claims Bien's testimony about his vision not changing is self-serving. Reply, p. 7. Because all evidence is self-serving,[9] and Bien's statements about his color vision in 2015 are not conclusory, Bien's declaration is sufficient to raise a question of fact about his ability to meet FRA color vision standards and thereby show he was qualified.

As this Court has noted, the problem with evidence labeled as self-serving is usually that it is conclusory. *Hernandez v. Rush Enters., Inc.*, No. 4:19-cv-638, 2020 U.S. Dist. LEXIS 237045 at *12, n.7 (E.D. Tex. Dec. 17, 2020), citing *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring).

Bien's declaration is not conclusory because he provides information about his color vision that could be investigated, and if untrue, opposed by contradictory evidence. For example, Bien's declaration describes the procedure used by conductors and engineers to call out the color of upcoming signals. Dkt. #55-1, ¶ 25. If Bien was getting signals wrong in 2015, Union Pacific could use the testimony of engineers with whom Bien worked to contradict Bien's assertion that he never called out a wrong color. There is no such evidence.

Bien's declaration is also supported by the fact he passed an Ishihara color vision test on September 17, 2015. *See* Defendant's Motion for Summary Judgment, page 7, ¶ 31. If this was not true, Defendant could present opposing evidence. Instead, Defendant included the test results, showing Bien's perfect score on the test, as a summary judgment exhibit. *See* Dkt. 45, exhibit A13.

---

[9] *Guzman v. Allstate Assur. Co.*, 18 F.4th 157, 160-61 (5th Cir. 2021) (evidence presented to oppose a summary judgment motion "'will inevitably appear 'self-serving,'" *citing Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016); *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring) (same).

In its reply, Union Pacific does not dispute that Bien's perfect score on this 2015 Ishihara test is some evidence that Bien's color vision was up to standards in 2015. At a minimum, there is a question of fact that defeats Defendant's request for summary judgment based on this issue.

### VII. Proving discrimination does not require proof of a discriminatory animus against a person or persons in the protected class.

The ADA prohibits discrimination "on the basis of disability," not discrimination because of a discriminatory animus against a person or persons with disabilities. 42 U.S.C. § 12112(a). Ignoring this, Union Pacific argues that direct evidence cannot exist without proof that the decision maker harbored a prejudice against persons with the disability in question. Reply at p. 9, citing *Kitchen v. BASF*, 952 F.3d 247 (5th Cir. 2020) (requiring proof of a "prejudice against alcoholics" or "discriminatory animus against [plaintiff] as an alcoholic."). This is incorrect, as illustrated by *Ricci v. Destefano*, 557 U.S. 557 (2009).

*Ricci* involved a test administered to firefighters in New Haven, Connecticut to assess their qualification for promotion. *Ricci*, 557 U.S. at 562. On one such test, white candidates outperformed minority candidates, and the city faced a dilemma. If the city certified the test results, it would be sued by minority firefighters alleging the test had a racially discriminatory impact. If the city did not certify the results, it would be sued by white firefighters claiming the test was fair, and that the city discriminated against them because of race by failing to certify the results. The city chose not to certify the results, and several white and Hispanic firefighters sued for race discrimination. *Id.*

The district court granted summary judgment for the city. The court ruled that the city made the decision to avoid making racially-discriminatory promotions, and not because of a discriminatory animus against the plaintiffs. *Id.* at 643 (Ginsburg, J., dissenting).

7

The Supreme Court agreed the decision was based in part on the city's desire to avoid liability for discrimination, and not because of a prejudice towards any racial group. However, this desire to avoid liability could not erase the fact that the city's employment decision was based on race. *Id.* at 579-81. Reversing both lower courts, the U.S. Supreme Court rendered judgment for the plaintiffs, finding the city liable for discrimination without evidence of discriminatory animus. *Id.* at 593.

In the present case, Defendant makes the argument the Supreme Court rejected in *Ricci*. Defendant does not dispute that its decision maker, Dr. Holland, imposed career-ending work restrictions on Bien because of disability (a "record of" and/or "regarded as" color vision impairment). Defendant claims this is not direct evidence because an additional inference is required to conclude that Dr. Holland acted with discriminatory animus. However, because this additional inference is not necessary to prove discrimination, Defendant's argument fails. Dr. Holland admitted in writing that he imposed restrictions on Bien because of his disability, so there is direct evidence of discrimination "on the basis of disability … in regard to … terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

As for pretext, should the Court reach that issue, the evidence calls Union Pacific's explanation for its actions into question. Defendant's motion for summary judgment states that the sole reason for its 2015 decision to keep Bien's work restrictions in place was "its obligation to comply with FRA regulations." However, Union Pacific's failure to include color vision assessment procedures in its conductor certification program shows the company did not feel constrained by these regulations, it could write its own rules. In this posture, a jury could easily find the company's sanctimonious assertion that it had no choice, it was just following

8

regulations, is untrue, a mere pretext for denying Bien's 2015 requests because of Holland's mistaken beliefs about Bien's vision.

Either way, because of direct evidence or proof of pretext, Union Pacific's request for summary judgment based on the *McDonnell Douglas* analysis fails.

## Conclusion

For the foregoing reasons, Union Pacific has failed to show as a matter of law that it is entitled to summary judgment on any aspect of Plaintiff's case. Plaintiff therefore prays for the entry of an order denying the motion in all respects.

Respectfully submitted,

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on November 24, 2025 I am filing this motion electronically using the Court's ECF filing system, which will email a file-marked copy of this motion to all counsel of record.

/s/ Donald E. Uloth
Donald E. Uloth