# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES BIEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-74 |
| | § | Judge Mazzant |
| UNION PACIFIC RAILROAD | § | |
| COMPANY, | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Dkt. #16). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #16) should be **GRANTED**.

## BACKGROUND

### I.    Factual Background

Plaintiff James Bien ("Plaintiff") brings this disability discrimination suit against his employer, Defendant Union Pacific Railroad Company ("Defendant") (Dkt. #31).[1] In 1998, Defendant hired Plaintiff as a switchman and brakeman (Dkt. #31 at ¶¶ 8–10). Plaintiff later assumed a conductor role (Dkt. #31 at ¶¶ 8–10). Prior to and throughout his employment, Plaintiff underwent various color vision tests, often failing an Ishihara color vision test before passing a

---

[1] On January 24, 2025, Plaintiff filed the instant lawsuit against Defendant (Dkt. #1). On August 15, 2025, Plaintiff filed his Third Amended Complaint (Dkt. #31), in which Plaintiff excluded his previously asserted failure-to-accommodate claim against Defendant (Dkt. #17 at p. 12). The Court considers the allegations made in Plaintiff's Third Amended Complaint (Dkt. #31) for the purpose of summarizing a factual background and making its determinations on the issues raised in the instant Motion.

secondary color vision test (Dkt. #31 at ¶¶ 9–11). Plaintiff continued his employment as a conductor for nearly fifteen years, working ably and safely (Dkt. #31 at ¶ 10).

In 2013, as part of his Federal Railroad Administration ("FRA") certification to work as a conductor, Plaintiff took an Ishihara color vision test which he failed (the "2013 Ishihara Color Vision Test") (Dkt. #31 at ¶ 16). Subsequently, on July 25, 2013, Union Pacific required Bien to take a color vision field test, which Plaintiff contends is unreliable, inaccurate, and does not replicate Plaintiff's working conditions (Dkt. #31 at ¶¶ 18, 21). Plaintiff failed this secondary test (Dkt. #31 at ¶ 22).

On July 29, 2013, Plaintiff was informed he was being removed from service as a conductor (the "2013 Work Restriction") (Dkt. #31 at ¶ 27). Through a letter dated July 30, 2013, Defendant notified Plaintiff that he was restricted from working jobs that required color signal recognition and that this restriction could not be accommodated, thus ending his employment as a conductor (the "2013 Letter") (Dkt. #31 at ¶¶ 27–28; Dkt. #31 at p. 29). Plaintiff admits that he also failed another color vision field test administered on August 20, 2013 (Dkt. #31 at ¶ 29). After several months of unemployment, Defendant hired Plaintiff as a Manager of Crew Utilization for less pay (Dkt. #31 at ¶ 37).

After Defendant imposed its work restriction on Plaintiff, on February 1, 2014, Defendant's updated "Medical Rules" went into effect, which outlined its Fitness-for-Duty Evaluations (Dkt. #31 at ¶ 13, pp. 17–28). These evaluations were intended to assess an employee's ability to safely perform the essential functions of that employee's job (Dkt. #31 at ¶¶ 13–14). Plaintiff alleges the Medical Rules impose a "rigid and formulaic approach to assessing the abilities of persons with

2

disabilities," and these assessments unfairly determine what "standardized work restrictions" Defendant can impose on an employee (Dkt. #31 at ¶ 14).

In August or September of 2015, Plaintiff received a notification from Defendant about performing a FRA recertification physical (Dkt. #31 at ¶ 38). On September 17, 2015, Plaintiff took and passed an Ishihara color vision test (the "2015 Ishihara Color Vision Test") (Dkt. #31 at ¶¶ 38–39). Based on this event, Plaintiff asked Defendant to have his medical information reviewed, to let him retake the color vision field test, to reconsider the 2013 Work Restriction, and to reinstate him as a conductor (Dkt. #31 at ¶ 40).

Defendant informed Plaintiff, through a letter dated October 13, 2015 (the "2015 Letter"), that the 2015 Ishihara Color Vision Test was "done in error," and he "should not have been allowed to take the FRA Certification vision test, since [he was] given permanent work restrictions by [Defendant] in 2013" (Dkt. #31 at pp. 30–32). The 2015 Letter further communicated that Defendant was denying Plaintiff's request to retake the color vision field test and that Plaintiff will "continue to have permanent work restrictions that [he] not do jobs that require accurate identification of colored train signals, based on [his] failure of a Color Vision Field Test in 2013" (Dkt. #31 at p. 31).

## II. Procedural History

Plaintiff was not the only litigant to take issue with Defendant's revision of the Fitness-for-Duty evaluations and its effects on their employment.[2] On February 19, 2016, several of Defendant's employees who had been removed from their positions following their failing of an

---

[2] Indeed, days before Plaintiff filed the instant lawsuit, a similar case was filed—*Jeffrey Todd Cooley v. Union Pacific Railroad Company*, Civil Docket No. 4:25-cv-56. Both cases before the Court involve Defendant, raise similar claims, and involve a similar statute of limitations issue. In the *Cooley* case, on November 3, 2025, the Court granted Defendant's Motion to Dismiss, and the case was closed. The *Cooley* plaintiff has since moved for reconsideration.

assessment filed a lawsuit against Defendant alleging, *inter alia*, that Defendant's Fitness-for-Duty evaluations and subsequent employment decisions violated the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (the "ADA") (Dkt. #31 at ¶ 47). *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The proposed *Harris* class was defined as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Id.*

On February 5, 2019, the United States District Court of Nebraska certified the *Harris* class to more narrowly consist of: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." 329 F.R.D. at 628. Defendant filed an interlocutory appeal of this class certification, and on March 24, 2020, the United States Court of Appeals for the Eighth Circuit reversed the certification. *Harris*, 953 F.3d at 1039. The instant lawsuit comes to this Court following this decertification.

On April 10, 2020, less than a month after the *Harris* class was decertified, Plaintiff dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") and the Texas Workforce Commission (Dkt. #31 at ¶ 52). On September 3, 2024, the EEOC provided Plaintiff with a determination letter (Dkt. #31 at ¶ 53). On October 28, 2024, the EEOC provided Plaintiff with a right to sue letter (Dkt. #31 at ¶ 54). On January 24, 2025, Plaintiff filed the present suit against Defendant (Dkt. #1). Plaintiff amended his complaint twice,

ultimately alleging Defendant was liable for disparate treatment under the ADA (Dkt. #1; Dkt. #13; Dkt. #31).

In his Third Amended Complaint (the "Complaint"), Plaintiff asserts the following regarding the *Harris* class action: (1) Plaintiff was a putative class member in the *Harris* case; (2) Plaintiff's claims against Defendant accrued after September 18, 2014; and (3) the *Harris* class action tolled the statute of limitations period for his claims against Defendant asserted herein from September 18, 2014 through March 24, 2020 (Dkt. #31 at ¶¶ 47–49). Because of the tolling period, Plaintiff now asserts two disability discrimination claims under the ADA and specifically alleges disparate treatment (Dkt. #31 at ¶¶ 56–74). On March 25, 2025, Defendant filed the instant Motion, arguing Plaintiff's ADA claims are time-barred (Dkt. #16). Plaintiff responded, and Defendant replied (Dkt. #17; Dkt. #18). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

# ANALYSIS

Defendant urges the Court to dismiss Plaintiff's claims because they are time-barred (Dkt. #16 at pp. 8–13). Additionally, Defendant argues Plaintiff fails to state a claim based upon an "actual" or "record of" disability (Dkt. #16 at pp. 6–8, 13–15). The Court considers each argument in turn.

## I.      Timeliness of Plaintiff's ADA Claims

Plaintiff brings claims for disparate treatment under the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(6) (Dkt. #31 at ¶¶ 56–74). Defendant argues Plaintiff has failed to timely comply with the ADA's administrative prerequisites prior to commencing this action. Under the ADA, a plaintiff must exhaust their administrative remedies against their employer before pursuing their claims in federal court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1)). To do so, the plaintiff must file a charge of discrimination with the EEOC or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice within 300 days of the alleged discriminatory act. *Id.*; 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)).

Here, the applicable limitations period for Plaintiff's ADA disparate treatment claims began to run from the time Plaintiff knew or reasonably should have known that Defendant's challenged conduct occurred. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000)). However, under *American Pipe & Const. Co. v. Utah*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). A district court's certification of a class therefore establishes "the pertinent class definition" so that each class

member's claims are tolled "until the class is decertified or the case is otherwise resolved." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 319 (5th Cir. 2024) (determining that plaintiff's claims were tolled because he failed a vision test that "at least suggested" he was covered by the class definition).

Defendant argues that Plaintiff failed to timely comply with the ADA's administrative prerequisites prior to filing suit. Specifically, Defendant argues Plaintiff's claims are time-barred for two reasons: (1) he was never a member of the *Harris* class, meaning the limitations period continued to run; and (2) even if he was initially a member of the *Harris* class, Plaintiff was unambiguously excluded from the class when the class was certified on February 5, 2019 (Dkt. #16 at p. 8). In contrast, Plaintiff contends his discrimination claims against Defendant should benefit from the tolling period because his claims accrued after September 18, 2014—during the tolling period created by the *Harris* case (Dkt. #31 at ¶¶ 63–64; Dkt. #17 at pp. 5–7). Specifically, Plaintiff argues his claims are based on the adverse actions taken by Defendant on October 13, 2015, conveyed through the 2015 Letter, when Defendant allegedly made a *new* decision pertaining to Plaintiff's Fitness-for-Duty (Dkt. #17 at p. 5). Plaintiff contends this subsequent decision imposes consequences that were more severe than those imposed through the 2013 Work Restriction (Dkt. #17 at p. 5). Finally, Plaintiff avers that Defendant's 2015 Letter communicated a *permanent* restriction from his job as a conductor (Dkt. #17 at p. 5).

Again, the tolling period created by the two *Harris* class definitions spanned from September 18, 2014 to March 24, 2020. *Harris*, 953 F.3d at 1039. To determine whether Plaintiff benefitted from the tolling period in *Harris*, the Court must determine whether Plaintiff was included in the *Harris* class, and if so, for how long.

8

"A class is initially defined by the plaintiffs via their complaint." *Zaragoza*, 112 F.4th at 318 (citing *American Pipe*, 414 U.S. at 554). "As class actions progress, plaintiffs may expand, narrow, or otherwise refine their action by filing amended pleadings." *Id.* With respect to tolling,

> [W]hen a district court certifies a class, that certified class becomes the pertinent class definition. Further, the class definition persists through appeal. A subsequent decertification of that class, either by the district court or the appellate court, ends tolling going forward but does not affect the earlier class certification for tolling purposes.

*Id.* at 319 (footnotes omitted).

### A.  Plaintiff was a member of the *Harris* class, as initially defined by the putative class.

First, the Court must determine whether Plaintiff was included in the proposed class definition of the then-operative complaint in *Harris*, which defined the putative class as follows:

> Individuals who were removed from service over their objection, and/or suffered another *adverse employment action*, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

329 F.R.D. at 621 (emphasis added).

Here, the parties agree that the operative date at issue is September 18, 2014, which is 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination (Dkt. #16 at p. 9; Dkt. #17 at p. 7). Thus, September 18, 2014, is the start of the tolling period. However, Defendant argues the original *Harris* class definition was limited to individuals removed from service on or after September 18, 2014 (Dkt. #16 at p. 9). Based on Plaintiff's own pleadings, Defendant argues he was removed from service as a conductor on July 29, 2013—the 2013 Work Restriction—which was before the operative date and thus, he cannot be included in the *Harris* class (Dkt. #16 at pp. 9–10; Dkt. #31 at ¶ 27). In contrast, Plaintiff argues the initial class definition

9

in *Harris* included Plaintiff because he was subjected to an adverse employment action for reasons related to a Fitness-for-Duty evaluation *after* September 18, 2014 (Dkt. #17 at p. 7). Specifically, Plaintiff's passed the 2015 Ishihara Color Vision Test before receiving the 2015 Letter, through which Defendant refused Plaintiff's request to retake a secondary color vision field test. Plaintiff argues this *decision* on October 13, 2025, was a discrete adverse employment action directly related to a Fitness-for-Duty evaluation (Dkt. #17 at p. 7).

The parties do not direct the Court to any case law suggesting that Defendant's denial of Plaintiff's request to reconsider the 2013 Work Restriction is or is not an adverse employment action. Thus, the Court, by accepting as true all well-pleaded facts in the Complaint and viewing those facts in the light most favorable to Plaintiff, agrees with Plaintiff. *Bowlby*, 681 F.3d at 219. Plaintiff was mistakenly ordered to take the 2015 Ishihara Color Vision Test and passed it (Dkt. #31 at ¶¶ 38–39). Based on this event, Plaintiff asked Defendant to have his medical information reviewed, to let him retake the color vision field test, to reconsider the 2013 Work Restriction, and to reinstate him as a conductor (Dkt. #31 at ¶ 40). Because Defendant denied these requests after September 18, 2014, Plaintiff suffered an *adverse employment action*, as he alleges (Dkt. #31 at pp. 30–32).

Therefore, Plaintiff's ADA disability discrimination claim was tolled through this initial putative class definition.

> **B.    Although he was initially a member of the *Harris* class, Plaintiff was unambiguously excluded from the revised class definition.**

Second, the Court must determine if Plaintiff was included under the revised class definition in *Harris*, as certified, thereby tolling his ADA claims until the *Harris* class was decertified on March 24, 2020. 953 F.3d at 1039. As stated before, the *Harris* district court certified

10

a class of plaintiffs including: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014, until the final resolution of this action." 329 F.R.D. at 628. Plaintiff's inclusion in the *Harris* class under *American Pipe* hinges on whether he was "subject to a fitness-for-duty examination" that occurred "as a result of a reportable health event." *Harris*, 329 F.R.D. at 628; *American Pipe*, 414 U.S. at 554.

*Zaragoza* is instructive to the Court's analysis. *See* 112 F.4th at 321. In that case, the Fifth Circuit considered whether an employee's failure to pass an Ishihara color vision test determined that employee's inclusion in the *Harris* class. *Id.* at 319. The Fifth Circuit held the plaintiff's first instance of failing the Ishihara color vision test "met the definition of a 'reportable health event'" under the *Harris* class definition. *Id.* at 321. The secondary light cannon test was therefore a "fitness-for-duty examination as a result of a reportable health event," and not the "reportable health event" itself. *Id.* Unlike Plaintiff, the plaintiff in *Zaragoza* failed both the Ishihara test and the secondary vision test in 2016—almost two years *after* the tolling period began on September 18, 2014, for the *Harris* class; therefore, the plaintiff in *Zaragoza* was included in the *Harris* class definition and enjoyed the tolling of his claims. *Id.*

Here, Defendant argues Plaintiff was not subject to a fitness-for-duty examination as a result of a reportable health event after September 18, 2014 (Dkt. #16 p. 11). Specifically, Defendant contends that when Plaintiff failed the 2013 Ishihara Color Vision Test, Defendant imposed the 2013 Work Restriction, which was a the permanent, involuntary removal of Plaintiff from his job as a conductor (Dkt. #16 at p. 11). Thus, as Defendant asserts, because Plaintiff's removal from service as a conductor on July 29, 2013 occurred *prior to* the start of the tolling period—September 18, 2014—Plaintiff is excluded from the *Harris* class as certified (Dkt. #16 at

11

p. 11). In contrast, Plaintiff contends that the 2015 Ishahara Color Vision Test he passed was the "reportable health event" at issue, as it indicated a new diagnosis of a possible vision change (Dkt. #17 at p. 10). Plaintiff argues that as a result of this event he was subject to a new Fitness-for-Duty "decision" on October 13, 2015, which is when Defendant determined the 2013 Work Restriction would remain in place (Dkt. #17 at p. 11). Because this "decision" occurred after September 18, 2014, Plaintiff argues "his claims were tolled from the time they accrued in 2015 until the *Harris* class was decertified by the [Eighth] Circuit on March 24, 2020"—meaning his charge of discrimination, which was filed less than a month after the *Harris* class was decertified, was timely. (Dkt. #17 at p. 11).

In its reply, Defendant directs the Court to the phrase "fitness-for-duty *examination*" as used in the narrowed *Harris* class definition (Dkt. #18 at p. 2). Defendant emphasizes that the court that certified the *Harris* class did not use the phrase "fitness-for-duty *decision*," as Plaintiff now ask the Court to use, but instead used the term "examination" (Dkt. #18 at p. 2). Moreover, Defendant's own Medical Rules includes a section titled "Health and Medical Services Fitness-for-Duty Decisions," which states: "[a]fter a Fitness-for-Duty *evaluation* is complete, Health and Medical Services determines if the employee/applicant is medically and functionally able to safely perform his/her job and make the following designations: Fit for Duty, Fit For Duty – with Restrictions, or Not Fit for Duty" (Dkt #31 at p. 23) (citation modified).

To begin with its analysis, given that Plaintiff previously failed the 2013 Ishihara Color Vision Test which triggered a secondary test and the 2013 Work Restriction, the Court finds that his passing the 2015 Ishihara Color Vision Test, even if it was mistakenly administered, could be considered as a "reportable health event" (Dkt. #31 at ¶¶ 38–39). *See Zaragoza*, 112 F.4th at 321.

However, unlike the *Zaragoza* plaintiff who failed two tests—first, the Ishihara test, which was the "reportable health event," followed by, the light cannon test, being the "fitness-for-duty examination"— Plaintiff never underwent a "fitness-for-duty examination" or any secondary color-vision test that was triggered by the 2015 Ishihara Color Vision Test any time after September 18, 2014. *See Zaragoza*, 112 F.4th at 321. Indeed, after Plaintiff passed the 2015 Ishihara Color Vision Test, marking the "reportable health event," he asked Defendant to let him take a secondary color vision field test, which could have been a "fitness-for-duty examination," but Defendant refused this request (Dkt. #31 at ¶¶ 38–40). Instead, Defendant advised Plaintiff the 2015 Ishihara Color Vision Test was "done in error," and he "should not have been allowed to take the FRA Certification vision test, since [he was] given permanent work restrictions by [Defendant] in 2013" (Dkt. #31 at p. 31). The 2015 Letter communicated that Defendant was denying Plaintiff's request to retake the color vision field test and that Plaintiff will "continue to have permanent work restrictions that [he] not do jobs that require accurate identification of colored train signals, based on [his] failure of a Color Vision Field Test in 2013" (Dkt. #31 at p. 31).

      The Court agrees with Defendant that Plaintiff cannot use evaluation and decision interchangeably. Defendant's Medical Rules draw a distinction between a Fitness-For-Duty Evaluation and a Fitness-For-Duty Decision (Dkt. #31 at pp. 20–23). Notably, an "examination" is included as a potential requirement under a fitness-for-duty evaluation, while a fitness-for-duty decision is defined as Defendant's Health and Medical Services determining if an employee is medically and functionally able to perform their job *after* a fitness-for-duty evaluation (Dkt. #31 at pp. 20–23).

Moreover, the plaintiffs in the *Harris* class proposed the narrower definition of the revised class, which used the word "examination" rather than "evaluation" as in the first definition. *See DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1102 (9th Cir. 2024) (analyzing *Harris*), *cert. denied*, 145 S. Ct. 1426 (2025). Defendant's Medical Rules were "incorporated by reference into the class definition," which was narrowed to correspond to a smaller list of relevant individuals identified by Defendant in discovery. *Id.* at 1102, 1105. To read fitness-for-duty "examination" and fitness-for-duty "decision" interchangeably would broaden the definition of the revised *Harris* class in contrast to the way it was originally narrowed by the *Harris* plaintiffs. The Court finds that while Plaintiff may have undergone a reportable health event when he passed the 2015 Ishihara test, this did not trigger a secondary vision test like in *Zaragoza*, and Plaintiff was never subjected to a fitness-for-duty examination. Further, the 2015 Letter attached to Plaintiff's Complaint is clear—this was not a secondary examination or a subsequent evaluation made by Defendant. Indeed, Plaintiff was already restricted from working as a conductor when he took the 2015 Ishihara Color Vision Test and this would continue, meaning the 2015 Letter merely conveyed that Plaintiff's status quo would continue.

Plaintiff was therefore excluded from the revised *Harris* class definition as initially certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his disability discrimination claims were only tolled from the time they accrued until February 5, 2019. *Harris*, 329 F.R.D. at 628; *see also American Pipe*, 414 U.S. at 554. As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117. As previously noted, Plaintiff did not file his Charge of Discrimination until April 10, 2020 (Dkt. #13 at ¶ 41; Dkt. #31 at ¶ 52). Consequently, because Plaintiff was excluded from the certified

class in *Harris* on February 5, 2019, and he failed to timely comply with the ADA's administrative prerequisites prior to commencing this action, Plaintiff's claims under the ADA are time-barred.

Accordingly, because Plaintiff's disparate treatment claims are time-barred, the Court finds that Plaintiff has failed to state a plausible claim for relief under Rule 12(b)(6), and Defendant's Motion should therefore be **GRANTED**.

## II.    Remaining Issues

Defendant raises the following additional arguments in its Motion: (1) Plaintiff failed to exhaust his administrative remedies (Dkt. #16 at pp. 6–8); and (2) Plaintiff fails to state a claim based upon an "actual" or "record of" a disability (Dkt. #16 at pp. 13–15). These arguments are now moot. The Court has determined that Plaintiff's disability discrimination claims are time-barred under the ADA, so any argument related to exhausting administrative remedies and pleading deficiencies in those claims does not affect the Court's determination.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #16) is hereby **GRANTED** and the case is hereby **DISMISSED** with prejudice.

All pending motions not previously addressed by the Court are **DENIED** as moot, and the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED**.
**SIGNED this 2nd day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE